LOTTINGER, Judge.
This is a suit in tort wherein the petitioner, Gerald Freeman, claims personal injuries as a result of an accident involving a motorcycle owned and being operated by him which was in collision with an automobile. The defendants are Cameo, Inc., a Texas corporation authorized to do and doing business in Louisiana, and its liability insurer, Liberty Mutual Insurance Company. The Lower Court awarded judgment in favor of Mr. Freeman in the amount of $22,500.00 for his injuries, pain and suffering, $1000.00 for future medical expenses, $2500.00 for present and future loss of wages, and $3189.68 for accrued *661 medical expenses, thus making a total of -$29,189.68.
From this judgment, the plaintiff timely perfected a devolutive appeal asking that the amount of the judgment be increased. This appeal was answered by both of the defendants who had been cast in judgment and in their answer the defendants re-urged the plea of contributory negligence originally pleaded in the District Court, and alternatively asked for a reduction of the award to Mr. Freeman to the sum of $10,000.00.
Thisi answer of the appeal by the defendants places before this Court for review the entire case, both with reference to liability and with reference to quantum.
The facts disclose that the accident in question occurred on June 22, 1962, at approximately 1:30 A.M. on U. S. Highway 90 East of Houma, Louisiana and at just about the City Limits of the City of Houma, Louisiana and almost directly opposite a service station known as the Highway 90 Gulf Service Station.
Just prior to the accident, Mr. Billie Jo Barrett was driving a 1954 Ford Panel truck owned by the defendant, Cameo, Inc., in his capacity as an employee of Cameo, Inc. Mr. Barrett testified that he was on duty for Cameo, Inc. at the time of the accident, that he had left Lafayette, Louisiana, some time between 8:30 and 9:00 P.M. of the same night that the accident happened. He was accompanied by a helper, one Wayne Blackburn. Mr. Barrett testified that he and his helper had had supper in Morgan City, Louisiana, some time between 11:00 and 11:30 P.M., and that he and his helper had stopped to drink a beer immediately prior to the accident. He testified that they drank this beer in a tavern inside the City Limits of Houma and a very short distance from the place where the accident happened. After Mr. Barrett and his helper had drunk a beer, he testified that they got into the truck, got back on Highway 90 and proceeded north in the direction of New Orleans in search of a service station. He saw the lights of the Highway 90 Gulf Service Station ahead and across Highway 90, slowed his vehicle, and as he came abreast of the entrance to the service station, commenced making a left hand turn to go into the service station. As he was in the process of making the turn and when the left front fender of his vehicle was between two and three feet into the left hand lane of traffic, he collided with a 1960 Harley-Davidson motorcycle being operated by the plaintiff and traveling in a southerly direction on Highway 90 toward the City of Houma.
A city policeman from the City of Hou-ma, Louisiana, who investigated the accident and arrived at the scene very shortly after it happened, found the truck which had been operated by Mr. Barrett still partially in the south bound lane of traffic, found the plaintiff’s motorcycle burning and a total loss, testified that the point of impact was well within the south bound lane of traffic as he determined from debris etc., and found the plaintiff on the west shoulder of the road some 71 feet from the point of impact. The officer also testified that he found the left front wheel of the truck across the center line of the highway. The officer’s testimony indicates that while there was a very light fog present on the highway, that as he approached the scene of the accident, he was able to see the plaintiff’s motorcycle burning from a distance which he had measured and knew to be four-tenths of a mile.
Mr. Freeman, the plaintiff, accounted for the major portion of the time preceding the accident by testimony that he had visited a friend’s home and watched television for a considerable length of time, then gone to a drive-in restaurant and bar in the City of Houma where he drank one or more Coca-Colas, then went to the Silver Dollar, a tavern on U. S. Highway 90 north of Houma. He stayed there for a period of three to four hours, at which time he left to go back toward Houma, accompaniel by a female employee of the. Silver Dollar *662 who rode with him as a passenger. It was very shortly after his departure from the Silver Dollar that the accident happened.
Mr. Freeman was unable to give any positive testimony with reference to the details of the accident. He testified that the last thing that he remembered was leaving the Silver Dollar on his motorcycle, going south toward Houma on Highway 90 in his proper lane of traffic, and then waking up in the hospital after the accident..
Our review of the entire record convinces us that the Lower Court was correct in its finding that the employee of Cameo, Inc., who was driving its vehicle, was negligent, and that said negligence was the proximate cause of the accident. These two vehicles were approaching each other in opposite lanes of traffic and the driver of one of the vehicles, then owned by the defendant, Cameo, Inc., decided to execute that most dangerous type of maneuver, a left hand turn, and when he had only just commenced to execute said turn, came into collision with the other vehicle. The road was straight, and, except for what the witnesses described as a very light fog, was clear. It was certainly clear enough for Mr. Barrett, the driver of the defendant’s truck, to have seen the approaching vehicle. Mr. Barrett testified that he did not see the plaintiff’s motorcycle until it was right on him, and the fact that the truck left only 18 inches of skid marks from the right rear wheel bear this out. The testimony indicates, and the District Judge found as a matter of fact, that the lights on the plaintiff’s motorcjmle were burning at the time of the accident. The law places upon the driver who makes a left hand turn the absolute dirty to ascertain that his path, both ahead and to the rear, is clear before attempting to make this turn. One of the many cases so holding is Washington Fire and Marine Insurance Co. v. Fireman’s Insurance Co., 232 La. 379, 94 So.2d 295. It has also been held on many occasions that a left hand turn is one of the most dangerous maneuvers a motorist may execute and in doing so, great caution should be exercised. See Barnes v. Spikes, La.App., 148 So.2d 303 and cases therein cited.
Let us now consider the plea of contributory negligence on the part of Mr. Freeman which was urged by the defendants. Their first contention is that Mr. Freeman was operating his motorcycle without a headlight. As previously set forth, the District Judge found as a matter of fact that the light on the plaintiff’s motorcycle was burning prior to and at the time of the accident. There is direct testimony from the fireman who. extinguished the fire burning the motorcycle after the accident that the light of the motorcycle was burning at the time that he commenced to extinguish the fire. Mr. Barrett testified that he did not know whether the light on the motorcycle was burning or not. Mr. Freeman testified positively that he had turned his light on at the time that he left the Silver Dollar, immediately prior to the accident. We believe that the preponderance of the evidence clearly establishes that the headlight on the plaintiff’s motorcycle was in fact burning prior to and at the time of the accident.
The defendants secondly urge excessive speed on the part of the plaintiff as contributory negligence. Miss Perkins, Mr. Freeman’s passenger, testified that she estimated Mr. Freeman’s speed at between 40 and 45 miles per hour, with her eyes closed. Mr. Barrett, the defendant driver, testified that he could not give an estimate of the speed of the approaching motorcycle, as the motorcycle was right on him when he turned. It is our belief that the defendants have failed to sustain the burden of proof with reference to excessive speed on the part of the defendant.
The third allegation made by the defendants relative to the plaintiff’s contributory negligence is based on their allegation that the plaintiff was operating his motorcycle while in an intoxicated con *663 dition. The manager of the lounge where Mr. Freeman spent the three or four hours immediately preceding the accident, the barmaid who served Mr. Freeman at the lounge, and another patron who was present in the lounge during a great portion of the time when Mr. Freeman was present, as well as Mr. Freeman himself, all testified that Mr. Freeman had only drunk nonalcoholic beverages during the entire time that he was in the lounge. There is nothing in the record to indicate that Mr. Freeman had drunk any intoxicating beverages whatsoever, much less the fact that he was intoxicated.
We therefore find, as did the Lower Court, that the defendant has failed to carry the burden of proof with reference to the contributory negligence of the plaintiff. It is therefore our opinion that the sole proximate cause of the accident was the negligence of Billie T. Barrett, the defendant’s driver, in making a left hand turn at a time and place when it was unsafe to do so, and without first having ascertained that the roadway was clear before commencing said turn.
Having disposed of the liability question, we now come to the question which caused the plaintiff to perfect this appeal, viz. the question of quantum.
Following the accident, Mr. Freeman was admitted to Terrebonne General Hospital and was found to have sustained multiple contusions and abrasions about the face, head, chest and various parts of the body, but with more severe injuries having been inflicted in the region of the left ankle, which was rather macerated. He sustained compound fractures of the various bones of the foot and ankle, anterior tendons and fascia were torn and appeared devitalized, and large areas of skin were crushed and also appeared devitalized. He was given treatment in the emergency room of the hospital. His wounds were debrided thoroughly, the various fractures and dislocations were reduced, but the tissues were •so mutilated that reduction was not maintained accurately. Mr. Freeman remained in the hospital for a period of sixty days, during which time at various intervals his wounds were debrided and large areas of slough were removed on the anterior surface of his ankle, thus exposing the tendons which were also sloughed and which in turn revealed two tarsal bones which were exposed.
On August 9, 1962, under general anesthesia, two necrotic tarsal bones were removed, the excessive granulation tissue was excised and a split skin graft was removed from the left thigh and sutured to the various wounds.
On September 5, 1962, Mr. Freeman was again admitted to Terrebonne General Hospital for a- period of approximately five days during which time excessive granulation tissue was again excised, a split skin graft was removed from the left thigh and sutured to the wound. Mr. Freeman was referred to an orthopedic surgeon, Dr. George Battalora, Jr., who, on November 20, 1962, made an attempt to reduce the second metatarsal back into its normal position, but was unable to do so, and therefore resected the entire second metatarsal bone.
Mr. Freeman, prior to the time of the accident, had been a welder employed by a concern which primarily erected steel boats. The manager of that concern testified that with Mr. Freeman’s injury he would not rehire him because he considered that in his present condition, Mr. Freeman was a danger to himself as well as to fellow workers.
The record clearly establishes that except for the sum of approximately $100.00 which he earned doing part time work as an automobile mechanic and except for a short part time job given him by his former employer, cutting grass, Mr. Freeman did no work from the time of his accident through the date of the trial. The record likewise discloses that Mr. Freeman’s average weekly wage, based on an hourly wage of $1.70 with forty hours *664 per week of regular work, and ten hours per week of overtime, amounted to $88.50 per week. The accident occurred on June 22, 1962, and the date of the conclusion of the trial of this case was February 19, 1964. Thus, 89 weeks elapsed in the interim between the accident and the termination of the trial. Counsel for plaintiff has argued that the evidence clearly establishes that Mr. Freeman will never again be able to hold the job that he was doing at the time of the accident, either with his former employer or any other employer in a similar business. While we recognize that this may be true, we nevertheless also recognize that this is not a workmen’s compensation case where the test to be applied to the plaintiff’s injury is whether or not he is capable of doing work of a reasonable character that he was doing before his injury. This is rather an action in tort and its purpose, once having determined the liability of the defendant, is to compensate the plaintiff for the earnings which he has lost in the past as a result of his injury, and for those earnings, if any, that he will lose in the future by reason of his injury.
The Lower Court awarded the sum of $2500.00 to the plaintiff for loss of present and future wages. It. is our opinion that this portion of the award constituted an abuse of the Lower Court’s discretion, and that the award for present and future earnings should be increased to the sum of $8500.00.
Two orthopedic surgeons testified: Dr. Battalora, who had been treating the plaintiff for an extended period of time, and Dr. Saer, who had examined the plaintiff in his office several days prior to the termination of the trial. Both doctors substantially agreed that in all likelihood, Mr. Freeman would require one and possibly two further surgical procedures. Dr. Battalora, in his deposition, testified that the probable cost of one of these procedures was $1400.00, including hospital bills and surgeons fees. His testimony was uncon-tradicted by Dr. Saer at the time of the trial. The Lower Court awarded Mr. Freeman the sum of $1000.00 for future medical expenses. We believe this award to be somewhat inadequate and believe that it should be increased to the sum of $1400.00.
We have examined the record carefully with reference to the injuries suffered by Mr. Freeman in this accident and it is clear that he sustained a very severe injury to his foot. Dr. Battalora estimated that Mr. Freeman had a sixty per cent permanent disability of the foot, and Dr. Saer, who testified for the defendant, testified that Mr. Freeman had a fifty per cent disability of the foot. While the injury doubtless caused pain to Mr. Freeman for a considerable length of time, the record shows that he is now reasonably comfortable with the orthopedic prescription in the shoes that he wears. The medical evidence also indicates that in all likelihood as soon as one of the corrective operations is done to Mr. Freeman’s foot, that he will be relatively free of pain. Counsel for plaintiff cites in his brief the case of Crowther v. Fenstermaker, La.App., 96 So. 2d 91, and has suggested that the injuries suffered by the plaintiff in that case are in many respects similar to the injuries suffered by Mr. Freeman; and that accordingly there should be judgment in favor of Mr. Freeman for a like sum for his injuries and pain and suffering. The Crowther case was reviewed by this Court and we are of the opinion that the injuries suffered by Mrs. Crowther in that case are far more serious than those suffered by the plaintiff in the instant case.
We do not think that there was any abuse of discretion by the Lower Court in the quantum of damages awarded to Mr. Freeman for his injuries, pain and suffering.
For the above and foregoing reasons, the Trial Court’s award in favor of plaintiff for future medical expenses is increased to $1400.00; the award for present and *665 future loss of wages is increased to $8500.00; and as thus amended, is affirmed in all other respects.
Judgment amended and affirmed.