TATE, Judge
(dissenting from denial).
The majority reduces the trial court’s considered award for general damages from $30,000 to $15,000. In paying pious lip service to them, the majority in fact refuses to apply the principles enunciated by *737 our Supreme Court that, upon appellate review of general damage awards, the sole question is whether the trial court abused its great discretion, that each injury is to he evaluated according to its own peculiar circumstances, that prior awards should not be used to categorize awards, and that prior awards are of value only in determining whether the present is so greatly out of proportion with prior awards as to suggest that the trial court may have abused its great discretion. Ballanga v. Hymel, 247 La. 934, 175 So.2d 274; Ballard v. National Indemnity Co., 246 La. 963, 169 So.2d 64; Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149. See LSA-Civil Code Art. 1934(3).
After citing Gaspard and Ballard, the majority then uses five “foot” awards to prove that under the “foot” schedule the present “foot” award should have been $15,000 instead of $30,000. This approach, it appears to me, directly flouts the admonition of our Supreme Court in Gaspard v. LeMaire, above-cited, at 158 So.2d 158:
“ * * * As we now view the matter, entirely too much emphasis has been given to the goal of uniformity of awards for similar injuries, the appellate courts’ role in maintaining this uniformity has been extended too far, and adjudicated cases have been given too much weight in the appellate courts’ determination of the adequacy or inadequacy of awards. When the doctrine is urged as applicable, cases relied upon may be similar in that each of them involves a similar injury such as a broken arm, the loss of an eye or eyes, or the loss of some member of the body. Thereafter, however, the similarity ceases for each case is different, and the adequacy or inadequacy of the award should be determined by the facts and circumstances peculiar to the case under consideration. The primary purpose of the judge or the jury in fixing the award in a personal injury case is to adequately compensate the injured person for his injury under the facts shown to exist in his case.”
The question before us is only whether the trial court abused its discretion in awarding $30,000 for injuries which have produced permanent pain and disfigurement, and also some disability in ordinary motion and in the ordinary activities of life. If instead of limiting our view to “foot” injuries (and the plaintiff on rehearing has well distinguished the cases cited as involving less serious injuries), we also take into consideration awards made for other types of injuries, it becomes readily apparent the trial court did not abuse its discretion.
For instance, referring to a few only, at random and without research:
In Gaspard v. LeMaire itself, the Supreme Court affirmed an award of $19,500 to a middle-aged housewife with painful residual from a compression fracture of a vertebra very similar in effect to the present (except that in the present case the condition is deteriorating); however, the successive surgery and extended greatly more severe painfulness of the present could well justify the greater award. Again, in Knotts v. Employers Casualty Co., La.App. 3 Cir., 177 So.2d 630, we affirmed a trial court award of $45,000 to a 23-year-old young lady of beauty who was facially disfigured by a serious accident (although subject to improvement by plastic surgery) ; if that award was proper there for injuries nowhere near as permanently painful or incapacitating as the present, I cannot say the award of $30,000 here constitutes an abuse of discretion. Again, in McCorquodale v. Watson, La.App. 1 Cir., 170 So.2d 545, a 58-year-old man was awarded $17,500 for injuries without as persisting or serious a residual as the present.
After a full trial on the merits, including the opportunity for the trial court to evaluate the severity of the pain and the disability caused Mrs. Bernard according to the medical evidence, the trial court awarded her general damages of $30,000 for her painful, crippling, and permanent injuries. The majority of this court viewed *738 the lady’s injuries as less serious than the attending and operating physicians found them to be according to their uncontradicted medical testimony. (Apparently in part the majority relies upon 70 feet of film taken by a Pendleton Detective based upon his stalking her over two days.)
I suggest that the uncontr.adicted medical testimony shows the following: •
Following initial painful and serious injuries, at the (reopened) trial two years after the accident, Mrs. Bernard’s chief residual was a marked deformity and swelling of the right foot, painful, growing progressively worse. The effect of walking is to cause painfulness in the hip and the musculatures brought into play by the distorted member. As a by-product of the injury, a varicose vein condition is developing. The trial court correctly found that the medical evidence indicates Mrs. Ber-nards’s foot condition is deteriorating.
In an effort to relieve her pain and to permit her to walk a little more normally and without tiring so quickly, Mrs. Bernard has undergone foot surgery twice. At the time of the reopened trial on August 29, 1966, she was still not able to use her foot, which was still in a cast, and she was still using crutches as a result of this second surgery, some two years after the accident. The operating physician felt that the second operation had not improved the function much, only that as a result of it she would have a better gait and be able to wear a more normal shoe. Tr. 49. Under cross-examination, this operating physician did “hope” that Mrs. Bernard’s condition might improve — but of course the majority should not upon appeal hold her cured based upon this optimistic hope, when in fact she is still indefinitely crippled according to the record.
I am unable to say that our conscientious trial brother abused his discretion by awarding thirty thousand dollars for these permanent, persistingly painful, and crippling injuries. The sum awarded is well within the range of the awards usually made for similarly serious injuries. The majority would likewise have so concluded, I think, had it considered non-foot awards — instead of incorrectly limiting its inquiry only to the previous foot-awards cited, none of which concerned the particular configuration of injuries, pain, and other factors here present.
I respectfully dissent.